KEWAUNEE, GREEN BAY & WESTERN RAILROAD COMPANY, Appellant, vs. CITY OF GREEN BAY, imp., Respondent.

*March 6—April 11, 1939.*

For the appellant there was a brief by *North, Bie, Duquaine, Welsh & Trowbridge* of Green Bay, and oral argument by *Walter T. Bie.*

For the respondent there was a brief by *Thomas C. Dwyer,* city attorney, and *M. E. Davis,* special counsel, and oral argument by *Mr. Davis.*

FOWLER, J. The action is brought by the plaintiff railroad company against the city of Green Bay to enjoin enforcement of the city's zoning ordinance as against described premises of the plaintiff and to have the tract declared industrial as distinguished from residence property. The defendant by cross complaint demands that the property be adjudged residential.

The plaintiff's tract is four hundred feet long north and south, forty feet wide at the street at the south end, and sixty

feet wide at the north end. It is adjacent to the plaintiff's main-line track with a spur from the main track at the south end of the tract partly on the right of way and partly on the tract. On the tract is a frame warehouse 30 by 50 feet in dimension used for storage of lumber by a wholesale lumber dealer. The railroad right of way is thirty feet wide. The zoning ordinance was adopted November 17, 1925. At this time the company did not own the tract here involved. In 1927 it purchased the land on which the warehouse is located, and in 1928 purchased two other tracts from the owners of residences facing on a street paralleling the railroad track. The tracts constituted the rear of the back yards of the residences. At the time of the purchase of the warehouse it was used for storage of cement blocks manufactured on the premises.

The zoning ordinance puts the block wherein the plaintiff's tract is located with the surrounding blocks in a "second residential" district. The main line of plaintiff runs through this block a little east of its center. Contiguous residences occupy the four sides of the block, except that three lots east of the north end of plaintiff's tract are vacant. The residential tracts adjacent to the plaintiff's tract facing west are approximately one hundred forty feet deep; those facing north, about one hundred feet; those facing east, from eighty on the north to one hundred twenty on the south. Two residences east of the railroad track facing south are on tracts about sixty feet deep. Next west of the plaintiff's tract is an automobile garage and repair shop, and next to that facing south on the southwest corner of the block is a grocery store. The latter two tracts were so occupied when the zoning ordinance was adopted.

The lessee of the warehouse informed the plaintiff in December, 1936, that he needed a larger warehouse and would have to move unless plaintiff provided him with a larger one. The plaintiff, desiring to keep him as a tenant, applied to the defendant Manders, the building inspector of the city, for a

permit for the construction of an addition to the warehouse extending it fifty feet to the north, as required by an ordinance of the city. The permit was refused because by the zoning ordinance the tract was in a part of the city classified as residential. The plaintiff thereupon applied to the city council so to amend its ordinance as to permit construction of the addition as the zoning ordinance provides may be done by that body. The council refused so to do. The plaintiff still desires to erect such warehouse extension and to use the whole of its said tract for storage and warehouse purposes. The tract is unsuitable for any other than industrial uses and is of little value unless such use is permitted. The following purposes are expressly included in the zoning ordinance as purposes to which industrial property therein may be put : any use permitted in the first and second business district; construction material business; warehouse; lumber yard.

The testimony and the photographs in evidence show that the land facing all the streets surrounding the block in which plaintiff's track is located is occupied by residences that are attractive in appearance, and suitable for second-class residence property in zoning ordinances, and the premises adjacent to them are well kept. Photographs in evidence also show that the addition to the warehouse desired to be erected by the plaintiff would not render the plaintiff's tract more subject to objection by owners and occupants of residences in the neighborhood from any standpoint than is the property in its present condition, and no more subject to such objection than is the garage and repair shop adjacent.

The plaintiff claims that the zoning ordinance is void because not properly enacted; that its tract is in fact classified as industrial property by the ordinance, or if not, is void for uncertainty in respect of its said tract; and that enforcement of the ordinance against plaintiff's property in suit according to its terms as construed by the defendant would result in depriving the plaintiff of its property without due process.

Under the view we take of the case we need to consider only the second of these claims, as determination of that claim in favor of the plaintiff gives to the plaintiff all the relief demanded respecting its tract. Some further statement of facts is necessary to an understanding of our decision.

The ordinance does not describe the boundaries of the different classes of property. It merely divides the city into six districts, denominated as "A to F," and recites that "the boundaries of such districts are shown upon the map hereto attached and made a part of this ordinance, being designated as 'Zoning Map.'" No map is attached to the ordinance or ever was. A map was finally produced which was found by the court to have been filed with the ordinance. It does not show six districts marked as "A, B, C, D, E, and F" as the ordinance recites. No such letters appear on it. It bears a "legend" showing seven distinct and different district markings, six of which are denominated as indicating first residential, second residential, first business, second business, industrial, and unrestricted. The other is designated as suburban.

The marking of the plaintiff's railroad at the location of its property involved is marked on the map precisely as "industrial districts" are marked, except that a light line appears in or near the middle of the marking. Measured by the scale on the map the marking indicates a width of one hundred feet as nearly as the eye can judge on application of a scaled ruler. Other railroad lines are marked in the same way on the map, but plaintiff's road is not so marked on the map east of the Fox river except near the east limits of the map where the marking indicates a width of about fifty feet and at the extreme limits of about half that width for a distance of about one thousand feet. The portion of the plaintiff's line not marked as "industrial" extends for over three fourths of a mile through a second residential district. The map measured by its scale indicates the zoned area as about four miles

east and west and three miles north and south. The contour of the zoned area is very irregular, as are the contours of the different districts. The railroads in the city other than the plaintiff's bear the same marking as industrial property. The defendant argues from this that the marking was used merely to designate a railroad line.[1] This would be persuasive but for the fact that plaintiff's line east of the Fox river for three fourths of a mile running through residential district is not so marked. It also appears that the plaintiff's line for a distance of seven eighths of a mile at the west zoning limits passing through a second residential district is not so marked, and that east from where the marking as industrial property ceases the marking as industrial property for nearly half a mile is only about half the width as at the location of the property in suit, for a short distance ceases entirely, and then the industrial marking begins again, gradually widens to one hundred feet.

The property in suit was purchased by the plaintiff for the purpose of accommodating small industries. The company would not have bought it had they not considered that the map and the ordinance indicated it was dedicated to such use. The engineer of the company examined the zoning map in the city engineer's office, measured the marking at the location of the property by the scale on the map and concluded that a strip one hundred feet wide was designated on the map as for industrial use. We consider that his inference was correct— that by the "great weight and clear preponderance of the undisputed evidence"—the map itself—establishes a strip one hundred feet wide as industrial property. The right of way is only thirty feet wide; the map marks a strip one hundred feet wide at the location the same as industrial property is marked, and does not so mark the railroad line for three fourths of a mile east of the river or at the west zoning limits; the property was in use as industrial when the zoning ordinance was passed, and had a building on it so used and

adaptable for such use. The strip of land in suit, plus thirty feet of right of way adjacent on the east, is at all points less than one hundred feet in width, but the use made of the property as industrial must be confined to thirty-five feet west of the right of way.

*By the Court.*—The judgment of the circuit court is reversed, with directions to enter judgment according to the prayer of the complaint.